79 597
e101 ¹555

MARY E. CARPENTER, Respondent, v. SUPREME COUNCIL LEGION OF HONOR, Appellant.

St. Louis Court of Appeals, April 4, 1899.

1. **Action Upon a Benefit Certificate**: LEGAL PRESUMPTION OF DEATH. The legal presumption of death permitted at common law upon the lapse of seven years is also allowable before the expiration of that period, if there is evidence tending to prove that death occurred at an earlier date, or showing a greater probability of death than life at the prior date.

2. ———: PRACTICE, TRIAL. In the case at bar the character, habits, antecedents and immediate surroundings of the husband of plaintiff tend to prove that his disappearance was more probably caused by the extinction of his life, than its continuance. Held, that the trial court correctly permitted the jury to pass upon the probabilities inferable from these special circumstances.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

AFFIRMED.

McKEIGHAN, BARCLAY & WATTS and T. H. BACON for respondent.

Death, like any other fact, may be proved by circumstantial evidence. It is not necessary in case of an alleged disappearance and death either to show that seven years has elapsed since the person was last seen or heard from, or that when last seen he was in contact with a specific peril. It is enough if the evidence reasonably shows that, according to human experience, it is more probable that the person is dead than that he is alive. Hancock v. Ins. Co., 62 Mo. 26-32; Lancaster v. Life Ins. Co., 62 Mo. 121-129; Tisdale v. Ins. Co., 26 Ia. 170-176. Where a person who has suddenly disappeared is alleged to be dead, any evidence which tends to throw light on the cause or motive of disappearance is relevant. Such as character, disposition, habits, domestic relations, circumstances of life, declarations and the immediate facts and circumstances surrounding such disappearance. Tisdale v. Ins. Co., *supra;* Hancock v. Ins. Co., 62 Mo. 26; Cox v. Ellsworth, 18 Neb. 554; 26 N. W. Rep. 460; Sheldon v. Farris, 45 Barb. 124-128; Supreme Council v. Boyle, 37 N. E. Rep. (Ind. App. Ct.) 1105. In this case the circumstances attending and preceding the disappearance all tended to show suicide by drowning on the evening of January 30, 1897. The age of Carpenter, his lack of physical strength, inability to find work, despondency, threats of suicide, want of funds at time of disappearance, proximity to the river when last seen, manner of leaving last messages, all tend, when taken in connection with the disappearance, to show suicide by drowning. The conversation with Whitlege and his proximity to the river at dusk of the

day he was last seen, show contact with what may reasonably be said to be a specific peril.    Previous conversations and threats of suicide were relevant and competent because tending to show intent, habits of mind, and also tending to explain the disappearance.    Consequently, it was competent to show previous threats of suicide as well as to show the letters left just before his disappearance.    State v. Mertz, 14 Mo. App. 59; Pratt   v. Coleman, 33 Mo. 71-76; Ins. Co. v. Vandecar, 86 Fed. Rep. 282-289; Ins. Co. v. Hillmon, 145 U. S. 285-295.

KINEALY & KINEALY for appellant.

The evidence as to the alleged attempt to commit suicide four or five years previous, was improper.    State v. Harrold, 38 Mo. 496; Bank v. Murdock, 62 Mo. 74; Hays v. Railroad, 15 Mo. App. 584.    The evidence as to the river being full of ice on January 30, 1897, should not have been admitted. Martin v. Union M. S. Co., 13 Wash. 275.    The statements of Mr. Carpenter that he would commit suicide, should not have been admitted.    Brownell v. Railroad, 47' Mo. 239; State v. Ware, 62 Mo. App. 592; Corbett v. Railway, 26 Mo. App. 621; Green v. State, 13 Mo. 382; State v. Evans, 65 Mo. 574.    Defendant's instruction in the nature of a demurrer to the evidence should have been given as there was no evidence tending to prove the death of John E. Carpenter.    State v. Banerle, 46 S. W. Rep. 609; Lancaster v. Ins. Co., 62 Mo. 121; Donaldson v. Lewis, 7 Mo. App. 403; Martin v. Ins. Co., 13 Wash. 275.

BOND, J.—This is an action upon a benefit certificate payable to plaintiff upon the death of her husband, which, and the other facts entitling her to recover, are alleged in her petition.    Defendant admitted all the allegations of the petition except the death of the husband.    Upon the trial of that issue, plaintiff had judgment for $2,000, the amount named in the benefit certificate, from which defendant appealed.

The errors assigned are, first, the refusal of the court to direct a verdict for defendant; second, misreception of evidence.

On the third of January, 1897, the husband of the plaintiff disappeared, and has not since been seen or heard of by his family or friends. At that date he was sixty-three years of age and resided with his wife at 3540 Olive street, in this city. About twelve years before he met with a total loss of fortune, after which he was employed as bookkeeper in Chicago, and latterly had a business connection in this city, wherein he earned about $75 per month, but for some time previous to his disappearance, he was unemployed and wholly without any means of support, except the charity of his friends and a former business associate. He became greatly depressed in spirits and often expressed an intention to commit suicide. He was a man of temperate habits, tenderly attached to his wife and married daughter, who constituted his family. His wife was his constant companion in the evening, either at home, or in visiting together. He wrote his daughter weekly letters often giving vent to his despondency and suggesting that "he had lived too long; that life was not worth living." On the morning of his disappearance he left a watch belonging to his wife which he had been carrying for years and some memorandum books of his own at his house in a drawer where his shirts were kept and came down town with a small sum of money for car fare and lunch, taking with him for exchange some china gold which his wife had purchased. This article and a letter to his wife (not received in evidence) were handed to her by Mr. Johnson, the last business associate of her husband, who found them and a letter to himself (not received in evidence) on the floor of his office when he opened it for business on the Monday morning following the Saturday on which plaintiff's husband disappeared. The day in question was cold, the river filled with floating ice, and the last point at which the husband was seen was the office of the harbor commissioner on the bank of the river, to which he repaired about

5 o'clock in the afternoon in great despondency, and where he recounted to an old friend, the assistant harbor commissioner, his disappointment in obtaining work, and concluded by saying that he "had better jump in the river." The efforts of his friend to remove his gloom were unavailing, and he left saying he did not know where he was going. He has not been seen or heard of since. Advertisements in the newspapers and posters offering reward for his discovery, met with no success. Neither did the search of his family and friends. Upon this evidence there was no error in the refusal of the trial court to direct a verdict for defendant. The case in hand does not fall within the terms of the statute (R. S. 1889, sec. 4890), nor the general law as to presumption of death from an unexplained absence for seven years (Flood v. Growney, 126 Mo. loc. cit. 264), for the plaintiff's husband was not shown to have left the state and the action was begun about two years after his disappearance. But the legal presumption of death permitted at common law upon the lapse of seven years is also allowable before the expiration of that period, if there is evidence tending to prove that death occurred at an earlier date, or showing a greater probability of death than life at the prior date. Teasdale v. Ins. Co., 26 Iowa, 107; Jones on Ev., sec. 57, et seq. Of course, where the legal limit of the presumed continuance of life is not relied upon, the burden of proving death within seven years is cast upon the party affirming that fact. To do so, however, it is not indispensable that the proof offered for that purpose should show the missing person was subject to a specific peril at a particular time; it is enough to adduce evidence of any "other circumstances" "calculated to shorten or destroy life" before the lapse of seven years. Lancaster, Adm'r, v. Ins. Co., 62 Mo. loc. cit. 129; Hancock, Adm'r, v. Ins. Co., 62 Mo. loc. cit. 31. In the case under review the evidence tends to show both a particular peril and special facts conducing to the death of Mr. Carpenter on the thirtieth of January, 1897. The entire testimony dis-

closes that he had for years discussed the subject of suicide with his near friends and family, freely expressing the opinion that it was the best solution of the difficulties of his life; that on the day in question, and when last seen, he communicated to an old friend his purpose to "jump in the river." It is a psychological truth that a mind revolving the thought of self-destruction and ultimately deciding to put it into execution, is in an abnormal condition and becomes a constant source of ready peril to its possessor dependent on the opportunity for effecting its purpose. When last seen Mr. Carpenter was near the river; it was nightfall; he was oppressed with past failures, in dire need in the present and hopeless of the future, and by his own confession bent upon putting an end to his life. His last words indicate that he had grasped the opportunity presented by the river and intended to use it. . To say under these circumstances that he was not then in a position of particular peril, would be to ignore the known law of mental science subjecting the will and action to the dominance of an idea which has mastered the intellect. In our opinion his mental perversion on the subject of suicide, his despair of the future, his declared purpose to jump into the river near which he stood, created a situation, which in connection with the ulterior fact of his complete disappearance thereafter from human view, warranted the inference that he was beset by a particular peril resulting in his death on the thirtieth of January, 1897.

But we need not rest our conclusion solely on the probative force of the foregoing evidence in justifying the submission of the issue to the jury as to the death of the husband of the plaintiff, for there was evidence of other special circumstances preceding his disappearance which point rather to his death on the day in question, than the further continuance of his life. Unable to live before that date, as the testimony shows, except by charity and assistance, is it reasonable to assume that stricken in years, friendless and despondent, he

could go beyond reach of sympathy and help and renew the struggle with greater success? And that to adventure upon this enterprise he would voluntarily sever every tie of husband, father, home and friends, with all their solacing uses, in order to prolong his hiding, and without love or sympathy, an existence which he had found insupportable even when these were present? Is it credible, in view of his open and affectionate nature, that he returned the package intrusted to him by his wife, in order to deceive her with a cruel suggestion of his suicide? · Is there any rational motive upon which we can account for his utter disappearance on the day and under the circumstances shown, and his failure to respond to diligent search and advertisement, consistent with his continued existence? In our opinion the man's character, habits, antecedents and immediate surroundings when he disappeared, afford substantial ground for a negative answer to these questions, and tend to prove that his disappearance was more probably caused by the extinction of his life than its continuance after January 30, 1897. Hence the jury were entitled to pass upon the probabilities inferable from these special circumstances.

The learned counsel for appellant complains of the reception of evidence tending to show by word or deed, on the part of Mr. Carpenter, his previous mental state on the question of suicide. It was competent for the plaintiff to introduce the evidence in question as tending to establish some of the special facts relevant to the greater probability of his death on the day when he suddenly passed out of view with the remark that he would jump into the neighboring river. Our conclusion is that the judgment should be affirmed. All concur.